HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Phone: (415) 433-1700
Fax: (415) 520-6593

MARK GERAGOS (SBN: 108325)
mark@geragos.com
ALEXANDRA KAZARIAN (SBN: 244494)
ak@geragos.com
MATTHEW VALLEJO (SBN: 322713)
vallejo@geragos.com
GERAGOS & GERAGOS,
A Professional Corporation
644 South Figueroa Street
Los Angeles, CA 90017-3411
Phone: (213) 625-3900
Fax: (213) 232-3255

JAKE VOLLEBREGT (SBN: 261465)
jmv@vollebregt.law
VOLLEBREGT LAW CORPORATION
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656
Phone: (949) 528-6401
Fax: (949) 528-6402

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PROFESSIONAL BEAUTY FEDERATION OF CALIFORNIA**, a California corporation, *et al*., | Case Num.: 2:20-cv-04275-RGK-ASx |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER** |
| v. | |
| **GAVIN NEWSOM**, in his official capacity as Governor of California, *et al*., | |
| Defendants. | Judge:  Hon. R. Gary Klausner |



# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................2

TABLE OF AUTHORITIES............................................................................3

**MEMORANDUM OF POINTS AND AUTHORITIES**............................5

**INTRODUCTION** .......................................................................................5

**FACTS** .........................................................................................................6

   I. DEFENDANTS THREATENED, AND HAVE CONTINUED TO THREATEN, ARBITRARY AND UNPREDICTABLE ENFORCEMENT ACTIONS AGAINST PLAINTIFFS FOR BENIGN AND COMPLIANT CONDUCT. ..........................................................................6

   II. THE GOVERNOR'S ORDER IS OVERLY BROAD, VAGUE, AND INVALID. ...................7

   III. DR. ANGELL'S "ESSENTIAL" AND "NON-ESSENTIAL" CATEGORIES BEAR NO CONNECTION TO PUBLIC HEALTH WHATSOEVER. .......................................................8

     A PLAINTIFFS' LICENSES HAVE BEEN REVOKED *IN FACT* BY DEFENDANTS WITHOUT DUE PROCESS OF LAW............................................................................9

     B. PLAINTIFFS' LICENSES ARE UNDER THREAT OF REVOCATION EVEN AFTER THE COVID-19 CRISIS ENDS. .....................................................................10

**REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER**.................10

   I. WITHOUT A TRO, PLAINTIFFS' HARDSHIP IS SEVERE. ...........................11

   II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS AND RAISE SERIOUS QUESTIONS TO THE VALIDITY OF DEFENDANT'S ORDERS.........................12

     A. PLAINTIFFS HAVE STANDING TO BRING THESE CLAIMS. ....................12

     B. DEFENDANTS' ORDERS CURTAIL THE FUNDAMENTAL RIGHTS OF PLAINTIFFS. 13

     C. PLAINTIFFS RAISE VIOLATIONS OF ARTICLE 1 OF THE CALIFORNIA CONSTITUTION. ....................................................................................19

   III. THE BALANCE OF EQUITIES TIPS DECIDEDLY IN PLAINTIFFS' FAVOR. .................21

   IV. A TEMPORARY RESTRAINING ORDER IS IN THE PUBLIC INTEREST. ......................22

**THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT** ......23

**CONCLUSION** .......................................................................................24



Table of Contents
Case No.: 2:20-cv-04275

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Marurak*, 94 F.3d 566 (9th Cir. 1996) .......................................21

*Armstrong v. United States* 364 U.S. 40 (1960)..........................................18

*Arneson v. Fox,* 28 Cal. 3d 440 (1980) .......................................................15

*Associated Gen. Contractors of Cal., Inc. v. Coalition for Economic Equity*, 950 F.2d 1401 (9th Cir. 1991)...............................................................................11

*Berean Baptist Church v. Governor Cooper*, Order, 4:20-cv-00081, Doc. # 18 (E.D. NC, May 16, 2020). ....................................................................................14

*Bible Club v. Placentia-Yorba Linda School Dist.*, 573 F. Supp. 2d 1291 (C.D. CA, 2008) ...............................................................................................................23

*Cavassa v. Off*, 206 Cal. 307 (1929) .........................................................18

*Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749 (N.D. CA, 1989) ..........................11

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ...........................13

*Connally v. General Const. Co.*, 269 U.S. 385 (1926). ..................................16

*Conway v. State Bar*, 47 Cal. 3d 1107 (1989)..............................................13

*Doctor John's, Inc. v. Sioux City*, 305 F. Supp. 2d 1022 (N.D. IA, 2004) ...................24

*Duncan v. Louisiana*, 391 U.S. 145 (1968) ...................................................19

*Earth Island Inst. v. United States Forest Serv.*, 351 F.3d 1291 (9th Cir. 2003) ..........10

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) ..................................................19

*Engquist v. Ore. Dep't of Agr.,* 553 U.S. 591 (2008). ...................................14

*Ex parte Arta*, 52 Cal. App. 380 (1921).....................................................20

*Ex Parte Jentzsch*, 112 Cal. 468 (1896).....................................................17

*Ex parte Martin*, 83 Cal. App. 2d 164 (1948)..............................................20

*Ex parte Milligan*, 71 U.S. 2, 120–121 (1866). .............................................5

*Farmers Ins. Exch. v. Cal.*, 175 Cal. App. 3d 494, (1985). .............................22

*For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). ..................12



3

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974)..................................................................................................10

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)..........................................16

*Griswold v. Connecticut*, 381 U.S. 479 (1965)................................................19

*Horne v. USDA*, 750 F.3d 1128 (9th Cir. 2014)..............................................18

*Jew Ho v. Williamson*, 103 F. 10 (C.C. N.D. Cal. 1900) .................................20

*Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427 (9th Cir. 1995).............10

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ...........................................14

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) .....................................23

*Kavanau v. Santa Monica Rent Control Board*, 16 Cal. 4th 761 (1997). .............18

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ....................................15

*Lowe v. S.E.C.*, 472 U.S. 181 (1985) ...........................................................13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).......................................12

*Marbury v. Madison*, 5 U.S. 137 (1803)........................................................16

*Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) ........................18

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) ..................................................16

*Shelton v. Tucker*, 364 U.S. 479 (1960) ........................................................15

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832 (9th Cir. 2001)....................................................................................................10

*Truax v. Raich*, 239 U.S. 33 (1915) ..............................................................19

*W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ......................13

**Statutes**

Bus & Prof. Code § 490............................................................................16

Bus & Prof. Code §§ 7403-7405 ................................................................20

**F.R.C.P.**

Rule 65(c)...............................................................................................23



Table of Authorities                                           Case No.: 2:20-cv-04275

## MEMORANDUM OF POINTS AND AUTHORITIES

"The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Such a doctrine leads directly to anarchy or despotism, but the theory of necessity on which it is based is false; for the government, within the Constitution, has all the powers granted to it, which are necessary to preserve its existence[.]"

Justice David Davis, *Ex Parte Milligan*, 71 U.S. 2, 76 (1866)

## INTRODUCTION

The deprivation of fundamental human liberties is not an appropriate societal vaccine for a pandemic. The United States and California Constitutions contain no exceptions for health crises, and neither may California's executive branch ignore fundamental constitutional norms on the basis of a health emergency.

Plaintiffs are licensed barbers and beauticians. In an overreaching response to the coronavirus pandemic, Defendants arbitrarily declared some businesses essential and others non-essential, regardless of their respective abilities to properly follow CDC guidelines. Defendants have gone so far as to threaten the revocation of Plaintiffs' licenses should Plaintiffs defy the order that their businesses are "non-essential." As licensed professionals who wish to continue practicing their trade safely, the half-million hair and beauty professionals of California play an essential role in the physical and mental health of tens of millions of Californians. Plaintiffs' ability to practice their trades is a civil right, one that may not be casually divested at the whim of the state.

A temporary restraining order and preliminary injunction are in the public interest because they would allow these issues to be resolved before Plaintiffs' businesses and livelihoods no longer exist.

5



# FACTS

Defendants, led by Governor Newsom, are using vague directives and arbitrary and capricious enforcement threats causing irreversible financial and personal harm to Plaintiffs and more than 500,000 other licensees in California.

## I. Defendants threatened, and have continued to threaten, arbitrary and unpredictable enforcement actions against Plaintiffs for benign and compliant conduct.

On March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency due to the threat of COVID-19. (1st Amended Complaint, Doc #11, ¶ 21. hereinafter "Compl.") On March 19, 2020, California Governor Newsom issued Executive Order N-33-20 ("Governor's Order") in which he ordered "all residents are directed to immediately heed the current State public health directives." (Compl., ¶ 23.) The Governor's Order requires "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors …". (Compl., ¶ 30.) The goal of the order was ostensibly to "flatten the curve" of the virus spreading.[1] The public health directive provides that it "shall stay in effect until further notice." (Compl., ¶ 30.[2]) California Government Code §8629 requires the Governor to terminate the state of emergency order at the earliest possible date, which would also terminate all emergency powers under the California Emergency Services Act.

---

[1] As of approximately April 13, 2020, the rate of transmission of the virus is estimated to be below 1, meaning it is no longer technically spreading. https://rt.live/

[2] There is significant scientific and policy dispute concerning the necessity and advisability of lockdowns as an effective means to combat the spread of the coronavirus; the government's continued justification for the shutdowns is far from clear. *See*, e.g., Stanford Medical Professor and epidemiology expert John Ioannadis' analysis in March, 2020: https://www.statnews.com/2020/03/17/a-fiasco-in-the-making-as-the-coronavirus-pandemic-takes-hold-we-are-making-decisions-without-reliable-data/; https://www.wsj.com/articles/do-lockdowns-save-many-lives-is-most-places-the-data-say-no-11587930911.



Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

On March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of a novel coronavirus, COVID-19. ("Compl.", ¶ 22.) Since the initial outbreak of COVID-19 in the United States in February and March 2020, the federal government's projections of the anticipated national death toll related to the virus has decreased substantially, by orders of magnitude. Despite such revisions, Defendants have continued to prohibit Plaintiffs' engagement in protected activities, with no coherent justification. (Compl., ¶ 33.)

On March 22, 2020, the California Public Health Officer, without going through any rulemaking procedures, unilaterally designated a list of "Essential Critical Infrastructure Workers" though nothing in the California Health & Safety Code provides that authority and the rules effectively criminalize entire classes of activities known only to the Public Health Officer.[3] The directive does not designate those holding Board-issued licenses as "Essential Critical Infrastructure." (Compl., ¶ 27.)

As of May 18, other states including Florida, Alabama, and Georgia, authorized barbers and hairstylists to resume licensed activities subject to appropriate guidelines for preventing the contagion of SARS-CoV-2 and COVID-19. (Lazar Decl.)

## II. The Governor's Order is Overly Broad, Vague, and Invalid.

As of February 2020, the State Board of Barbering and Cosmetology (the "Board") licenses 313,734 stylists and cosmetologists, 34,093 barbers, 90,392 estheticians, 129,802 manicurists, 1,679 electrologists, and 53,694 establishments. (Jones Decl., ¶ 3.) On or about May 1, 2020, the Board threatened disciplinary action against Plaintiffs' licenses unless they comply with the Governor's Stay-at-Home Order. (Compl., Ex. 3.)

To comply with the Governor's stay-at-home order, Plaintiffs closed their businesses. In reliance on the Governor's assurances and limited nature of the stay-at-home order, Plaintiffs took various measures in anticipation of promptly reopening.

---

[3] Cal Health & Saf Code, Div. 105, Pt. 1, Ch. 2.



Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

As a direct result of the Board's threat, Plaintiffs Gonzalez, Ibarra, Lam, Paul Mitchell, Salon Suites, and Zenbi have ceased commercial operations and have had no income from their respective licensed professions since the Governor's Order was issued. (Gonzalez, Ibarra, Lam, and Mentea Decls.) The subsequent threat of disciplinary action by the Board against Plaintiffs' licenses, despite being in compliance with all license and safety requirements, has only made the Governor's Order, which incorporates Dr. Angell's "Essential Activities" list, more vague. Plaintiffs cannot discern what, if anything, the law permits them to do under their state-issued licenses. Plaintiffs are further unsure whether they could engage in some form of commercial activity in compliance with the Governor's Order, such as offering services to an organization deemed "essential" (film studios, services for the elderly or disabled, etc.) or by setting up remote-learning operations. (Decl. of Mantea.)

### III.   Dr. Angell's "essential" and "non-essential" categories bear no connection to public health whatsoever.

 Stylists and cosmetologists are required to complete 1,600 hours of training. Barbers are required to complete 1,500 hours of training. Estheticians and Electrologists are required to complete 600 hours of training. Manicurists are required to complete 350 hours of training. (Jones Decl. ¶ 4.) These significant investments in time and costly schooling represent the investment-backed expectations that every licensee, including Plaintiffs, have in their licenses. Plaintiffs' livelihoods and their licensed activities face irreparable harm if Defendants' actions are not restrained.

Each Plaintiff is prepared to adopt appropriate measures as a prerequisite to providing licensed services to their clients and the public. Other "essential" businesses have been successful in doing so. By their very nature, salons and barbershops are a transitory location with very few people visiting at any given time. (Gonzalez, Ibarra, and Lam Decls.) However, due to the vague language and broad categories and the Board's threats of disciplinary action, Plaintiffs have no choice but to cease *all* commercial operations related for fear of disciplinary action against their licenses.



Memorandum of Points and Authorities                     Case No.: 2:20-cv-04275

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.   Plaintiffs' Licenses have been revoked *in fact* by Defendants without due process of law.

The Defendants' Orders have effectively revoked Plaintiffs' licenses by prohibiting them from engaging in licensed activities. The Board nevertheless continues to assess licensees for biannual fees of $50 for establishments or $40 for individual barbers in order to maintain their licenses. (Gonzalez, Ibarra, and Lam Decls.) Plaintiff Gonzalez has not received his establishment license, although he has met all requirements and paid the required fee. (Gonzalez Decl. ¶ 2.) On May 2, 2020, Plaintiff Lam sent correspondence to the Board requesting guidance on reopening. On May 4, 2020, the Board responded with no guidance other than direction to consult with their "industry association for additional guidance during this time." The Board offered no process or means to resume operations as a licensee. (Lam Decl. Ex. 1.)

On April 28, 2020, the Professional Beauty Federation of California ("PBFC") – i.e. Plaintiffs' "industry association," referred to in the May 4, 2020 correspondence from Board – drafted correspondence to the Board reminding the Board of the extensive education, safety and health training each licensee receives, and pointing out that the health/safety protocols concerning contagions that licensees adhere to far exceed those used by the "Stage 2" requirements. PBFC further requested action by the Board and Governor to address the vagueness of the Governor's Order as it pertains to what commercial activities its members could undertake without running afoul thereof. (Jones Decl. Ex. (1).) The Board has not provided any guidance, leaving Plaintiffs, and all licensees, in a state of professional purgatory and economic distress, with no end in sight but rent to pay, families to feed, customers seeking service in "black market" conditions, and nothing but threats from the government that licensed them.

Despite the absence of any of the requested guidance from Defendants, Plaintiffs have invested financial resources to make their businesses safe for reopening. They stand ready, willing, and able to reopen just as thousands of similar professionals have done in other states across the country.

DIG
DHILLON LAW GROUP INC.

Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

### B.    Plaintiffs' Licenses are under threat of revocation even after the COVID-19 Crisis ends.

On May 1, 2020, the Board issued a directive to all licensees, warning that violations of the "Governor's stay at home order" would result in "disciplinary action against their license" and "will not be taken lightly." (Compl., Ex. 3.) Last week, Bellus Academy received a complaint notice from the Board for its alleged failure "to stay at home" for the seemingly compliant activity of providing remote learning services to their students off-site. (Jones Decl. ¶¶ 8, 11.) This is the same type of remote, "streaming" service that the state has authorized for religious worship, and that countless lawyers have used for court appearances throughout the state during the shutdown. Plaintiffs face misdemeanor prosecution punishable by a fine of up to $1,000 and imprisonment for six months. In addition, Plaintiffs risk permanent loss of their profession if they do not properly navigate the vague and arbitrary categories of Dr. Angell's "essential workforce" directives. (Compl., Ex. 2.)

### REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER

A temporary restraining order ("TRO") preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The standards for issuing a TRO and a preliminary injunction are the same. *See, e.g.*, *Stuhlbarg Intern Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A court may grant the injunction if the plaintiff "demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Earth Island Inst. v. United States Forest Serv.*, 351 F.3d 1291, 1297-98 (9th Cir. 2003) (citing *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "The greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Id*.

Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

## I.   Without a TRO, Plaintiffs' Hardship is Severe.

First, Plaintiffs are being denied their fundamental rights to equal protection and due process—which protect the lawful use of their licenses—by Defendants' overly broad orders. The Ninth Circuit has held that "an alleged constitutional infringement will often alone constitute irreparable harm." *Associated Gen. Contractors of Cal., Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991); see also *Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 753 (N.D. CA. 1989) ("In various cases, courts in the Ninth Circuit have presumed irreparable harm from an alleged violation of constitutional rights."). Here, in addition to the infringement of their constitutional rights generally, Plaintiffs have suffered and continue to suffer irreparable harm as the result of the Defendant's Orders.

Even if an actual taking or revocation of a license has not yet occurred, the palpable and repeated threat of a taking by the Defendants against Plaintiffs' licenses has caused Plaintiffs to refrain from resuming their lawful business resulting in irreparable and ongoing harm. Defendants have segregated Plaintiffs and their livelihoods out of the economy as "non-essential," even though less restrictive means of protecting the public are available. Licensees are well-trained: Barbers and cosmetologists are required to have at least 1,500 hours of education and training in their field. Other states have adopted additional health and safety practices to protect the public. Without immediate relief, there is no reasonable way for Plaintiffs to recover the cash reserves and indebtedness they are using to cover fixed costs of maintaining leases, licensing fees, and their employees—treading water—in order to remain in compliance with the Defendant's Orders and keep alive some hope of using their licenses again.

Second, in the long term, Plaintiffs have been threatened with disciplinary proceedings from the Board if they fail to navigate the vague exceptions and carve-outs of Defendants' overly broad orders, thereby depriving them of being able to resume their livelihoods after the emergency subsides. (Compl., Ex. 3.) Plaintiffs' small businesses have required years to build and develop.  As cash reserves evaporate,



Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

Plaintiffs will soon reach a point of never being able to recover, short of seeking bankruptcy protection. This is precisely the type of irreparable harm that a temporary restraining order can prevent. These commitments were made and developed over many years in reliance of a statutory licensing scheme that authorizes them to engage in professional activities without arbitrary interruption. These decisions represent reasonable investment-backed expectations. If Plaintiffs are unable to utilize their licenses, then the licenses have been arbitrarily deprived of all value. If a temporary restraining order is granted, this professional and economic devastation can be avoided.

## II.   Plaintiffs are likely to succeed on the merits of their claims and raise serious questions to the validity of Defendant's Orders.

In cases where there is a likelihood of irreparable injury and an injunction would be in the public interest, a preliminary injunction is appropriate when there are serious questions going to the merits of the claim, and the balance of hardships tips sharply towards the plaintiff. *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Defendants' regulatory actions have arbitrarily infringed on Plaintiffs' fundamental rights and deprived Plaintiffs of their property without compensation in violation of the Constitution and the provisions of the Emergency Services Act.

### A.   Plaintiffs have standing to bring these claims.

Standing requires (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury "will be redressed by a favorable decision." See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  By being totally deprived of the use of their licenses and other property, each Plaintiff has been subject to a taking without just compensation.

Most Plaintiffs are all licensed individuals or establishments, who perform services in the State of California for which they are required to be licensed. Each of the foregoing Plaintiffs is being forced to refrain from his, her or its primary economic activity related to their licenses, while continuing to be responsible for ongoing financial commitments related to maintaining their licenses.



Plaintiff Federation is a nonprofit association. Defendants directed Plaintiffs to seek assistance from the Federation in navigating the Orders and determining what economic activity could be engaged in without disciplinary action. The Federation serves as a voice for the more than 500,000 licensees in all sectors of the beauty and barbering industries, including hair, skin, nail care, electrolysis, and beauty colleges. Its members hold licenses now taken and made worthless by the Defendants' Orders. Plaintiff Federation members are suffering ongoing and irreversible harm by continuing to have to pay rents and fees while facing the loss permanent closure if the Defendants' Orders are not stayed or reversed.

### B. Defendants' Orders Curtail the Fundamental Rights of Plaintiffs.

Some liberties are so important that they are deemed "fundamental rights," such that alleged violations of these rights are subject to strict scrutiny review by the Court. Where strict scrutiny is applied, a court will "strike down the legislation unless the classification drawn by the legislation is "suitably tailored to serve a compelling state interest." *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Pursuit of one's livelihood, the right to earn a living, and property are fundamental rights, and Defendants' deprivation of these rights from Plaintiffs was done in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I of the California Constitution. "It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose." *Lowe v. S.E.C.*, 472 U.S. 181, 228 (1985) (*quoting Dent v. W. Va.*, 129 U.S. 114, 121–22 (1889))); *see also Conway v. State Bar*, 47 Cal. 3d 1107, 1135 (1989) (holding that the right to earn a living is "fundamental"); *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("One's right to life, liberty, *and property*, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." (emphasis added)).

California's public officials are not excused by the COVID-19 crisis from

---



Memorandum of Points and Authorities                   Case No.: 2:20-cv-04275

narrowly tailoring their Orders to protect fundamental rights. There is no "pandemic exception" to the constitutions of the United States[4] and California. Before the Governor's Order was issued, Plaintiffs' property and activities have long been fundamental rights safeguarded by the Constitution, including without limitation, carrying on a business, performing a licensed activity, and using property for legal and beneficial use. Instead of allowing the Board to publish specific, appropriate guidelines for Plaintiffs' reopening, Defendants have chosen the heavy hand of a blanket criminalization of Plaintiffs' licensed activities.

### (i)    Denial of Due Process and Equal Protection

When the government takes away a person's life, liberty, or property, it must provide adequate procedures. The Governor's Order, Dr. Angell's list, and the Board's threatened disciplinary action violate Plaintiffs' fundamental rights to due process and equal protection. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." A State "violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

The California Supreme Court decision in *Ex Parte Jentzsch* was predicated on the principle that each person has the right to be governed by general rules and that a statute which singles out some for different treatment is an arbitrary mandate unrecognized by law. The Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" *Engquist v. Ore. Dep't of Agr.,* 553 U.S. 591, 602 (2008). No rational reason for singling out Plaintiffs' licensed

---

[4] *Berean Baptist Church v. Governor Cooper*, Order, p. 2, 4:20-cv-00081-D, Document 18 (U.S. Dist. Ct. of North Carolina, May 16, 2020).



Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

activities is found here. The Board's notice to licensees on May 1st compounded the general threat associated with the Governor's order because it adds permanent loss of license and livelihood to the general punitive measures associated with failing to comply with the Governor's Order. Other "non-essential" businesses (even those subject to other Boards) do not face this additional threat.

The Supreme Court recognized that even though a governmental purpose may be legitimate and substantial, it cannot be pursued by means that broadly stifle fundamental personal liberties of the type recognized here when the end may be achieved through narrower means. See, *Shelton v. Tucker*, 364 U.S. 479 (1960). Here, the government's public safety goals could have been narrowly achieved, but the Defendants chose not to tailor their orders at all, much less narrowly.

Plaintiffs have been deprived of procedures provided in various sections the California Business and Professions Code required prior to Plaintiffs being deprived of the rights granted with their licenses. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982). The Governor's Order has effectuated a taking of Plaintiffs' property while denying Plaintiffs due process provided by various provisions contained in the California Business & Professions Code. There are multiple provisions contained in the Business & Professions Code relating to revocation or suspension of licenses. Section 490 of the Business and Professions Code applies throughout the Business & Professions Code and provides that a license may be revoked only upon the conviction of a crime that bears a sufficient relationship to the qualifications of the profession to warrant the revocation. *Arneson v. Fox,* 28 Cal. 3d 440 (1980). Nothing in that section or the Business & Professions Code generally provides for a blanket suspension or revocation of licenses in the current context.

### (ii)     Vagueness

A regulation is constitutionally void on its face when, as matter of due process, it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Const. Co.*, 269 U.S. 385, 391



Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

(1926). Vague laws "trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972). If "arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Id.* The problem with a vague regulation is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis with the attendant dangers of arbitrary and discriminatory application." *Id*; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). The result of vague and arbitrary rules is selective enforcement, where a public official may exert their power and without restraint.[5]

This emergency is unlike any in our nation's history. Long-lasting state-declared "emergencies" are rare precisely because they do not serve the Republic well. The Governor's Order is so vague as to its scope and application as to run afoul of the Due Process Clause of the Fourteenth Amendment.[6] Defendants have made numerous carve-outs and exceptions to the stay-at-home order under the guise of "essential infrastructure activities." Instead of a transparent and equitable system of due process, with notice, hearings, and rights to appeal, determinations of "essential" and "non-essential" are handled through an opaque process of lobbying by special interests. For example, after being lobbied by the United Cannabis Business Association[7], Governor Newsom and Dr. Angell, amended their original List to declare that recreational cannabis retail stores were "essential" while maintaining that Plaintiffs' similarly

---

[5] "To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may at any time be passed by those intended to be restrained?" Hon. John James Marshall, *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

[6] The New York Times, for example, reported that "Gov. Gavin Newsom of California on Thursday ordered Californians—all 40 million of them—to stay in their houses." As of the date of this filing, the article is available online at the following URL: https://www.nytimes.com/2020/03/19/us/California-stay-at-home-order-virus.html.

[7] See, e.g., https://www.wsj.com/articles/california-deems-pot-an-essential-coronavirus-business-11585005903 (last visited on May 10, 2020).



licensed activities are "non-essential." This was the ad hoc method from the earliest stages of the declared emergency. On or about March 12, 2020 when gatherings of more than 250 were banned by Governor Newsom, he immediately announced special exemptions from the ban for Disneyland, other theme parks, casinos, and theaters.[8] There was no rational nexus to public health for these exemptions, and there is no rational reason to continue to ban Plaintiffs from the use of their licenses and other business property. Workers at "Big box" retailers such as Costco, chain drugstores (including those selling beauty supplies such as those Plaintiffs would like to sell), and larger grocery stores, are not required to have even a tiny fraction of the number of hours of health and safety training that Plaintiffs possess, yet they have been permitted to work with few restrictions, certainly no threats to forfeit licenses. Rather than narrowly tailoring their Orders by providing guidance on how Plaintiffs' industry may resume operations in a manner that protects public health, Defendants simply bypassed decades-old administrative hearing and legislative controls that would otherwise ensure due process, filling the void with no process at all.

Statutes that impact occupations based on arbitrary distinctions have long been disfavored in California, even if the laws were purportedly to *benefit* labor. The arbitrary nature of the distinction between "essential" and "non-essential" workers was the exact reason the California Supreme Court in *Ex Parte Jentzsch*, 112 Cal. 468 (1896) granted *habeus corpus* and effectively struck down a law that prohibited barbers from working on Sundays. The California Supreme Court noted that our government is not designed to be paternal in form and the law which punished barbers criminally for working on Sundays while allowing "essential" workers such as steam-car operators and members of the press to work on Sundays rested on an arbitrary mandate unrecognized by the law. Defendants make the same error offering no evidence that

---

[8] https://losangeles.cbslocal.com/2020/03/12/coronavirus-california-disneyland-closures-governor-newsom-covid/.



Memorandum of Points and Authorities                        Case No.: 2:20-cv-04275

Plaintiffs have any greater adverse impact on the health and safety of the public than those who work "essential" activities. Into the ninth week of this total suspension of all legal economic activity in Plaintiffs' industry, with the flush of emergency well behind us, Defendants still refuse to even attempt justify their arbitrary decrees.

### (iii)   Takings Clause

The Defendants' Orders violate the Takings Clause of the Fifth Amendment to the U.S. Constitution. The California Supreme Court has held the right to engage in a licensed profession is a property right of such high character that revocation of that license should only occur upon clear proof that the licensee has forfeited the same and only in strict conformity to the statute authorizing its forfeiture. *Cavassa v. Off*, 206 Cal. 307 (1929). The Takings Clause protects personal as well as real property. *Horne v. USDA*, 750 F.3d 1128 (9th Cir. 2014). The California Supreme Court has held that regulatory action that deprives a person of all economically beneficial use of their property requires just compensation. *Kavanau v. Santa Monica Rent Control Board*, 16 Cal. 4th 761 (1997). The United State Supreme Court also recognized that regulatory action which deprives a person of all economically viable use of his property is a taking which requires just compensation. *Nollan v. California Coastal Commission*, 483 U.S. 825, 834 (1987). California Government Code §§8570(i) and 8572 both contemplate compensation when, as here, government effects a taking during a declared emergency.

Plaintiffs hold licenses in good standing with the Board. Plaintiffs received their licenses after completing extensive requirements to obtain the licenses. Once received, the licenses are the property of those who receive them. The Defendants' orders deprived Plaintiffs of the use of their licenses and property. Defendants' actions are of the type the Court has long held that the Fifth Amendment was designed to bar, specifically government forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. See *Armstrong v. United States* 364 U.S. 40, 49 (1960). Here, Defendants' Orders selectively impose public burdens onto private shoulders.

Memorandum of Points and Authorities                          Case No.: 2:20-cv-04275

Plaintiffs do not have the option of working from home. By law, they may only operate from their shops or licensed facilities in which they are employed. Section 7404 makes operating outside of a licensed establishment a misdemeanor. There are at least five provisions in the Business & Professions Code relating to suspension and revocation of licenses that would be specific to Plaintiffs as holders of licenses issued by the Board.[9] In this case, Defendants' orders completely bypassed these procedures and simply banned the use of the Plaintiff's licenses and property in violation of Due Process. In the nine weeks since the declaration of Emergency, Defendants have had ample opportunity to provide a transparent, fair, and orderly process to accomplish their goals, but made no attempt to do so.

## C.   Plaintiffs raise violations of Article 1 of the California Constitution.

All Californians "are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy. Cal. Const. art. 1, § 1. The fundamental liberties protected by the California Constitution include most of the rights enumerated in the Bill of Rights. See *Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968).

In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *See*, *e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484–486 (1965). Engaging in the vocation of one's own choosing is central to individual dignity and autonomy.[10]

---

[9] *See* Bus & Prof. Code §7403-7405

[10] "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Hon. Charles Evans Hughes, *Truax v. Raich*, 239 U.S. 33, 41 (1915).

---

19



For more than 120 years, California courts have recognized that citizens have the constitutional right to engage in business. The State's police powers for regulating such business or occupation are subject to constitutional limits. The Governor's Order and Dr. Angell's List are tantamount to a statewide quarantine, indiscriminate between healthy and infected people – but with millions able to go to work, while other millions, arbitrarily chosen such as Plaintiffs, unable to do so. California courts have held that Public Health Officials' authority is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." *Ex parte Martin*, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease …" *Id.* Dr. Angell goes well beyond this authority by restricting millions of "non-essential" workers to their homes.

California courts have found that "a mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all *for depriving persons of their liberty* and subjecting them to virtual imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added). The California Supreme Court struck down a quarantine order in San Francisco when 10,000 people were similarly quarantined without distinction. The Court noted that the defendants in that case, as would be the case here as well, had no information concerning individuals upon which to found any belief that they were infected or spreading infections and if that were the case "dealing with a single case or a single fact, it would, of course, be insufficient.  But, when it comes to dealing with a large population, -- 10,000 or more, -- the court must recognize that the lack of information on the part of the defendants is an infirmity that belongs to their case on the merits." *Jew Ho v. Williamson*, 103 F. 10, 15 (C.C. N.D. Cal. 1900). These courts found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of

20

contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof, has or have existed." *Jew Ho*, 103 F. at 10.

Here, Defendants' orders curtail the fundamental rights of more than 500,000 licensees, including the Plaintiffs, making Governor Newsom's case for indiscriminate regulation even more indefensible than was the case in *Jew Ho*. Requiring Plaintiffs to abstain from all non-essential activity as determined within the sole discretion of the Governor and the Public Health Official, despite any attempt to narrowly tailor the orders to allow modifications to satisfy the public health interests at stake, violates Plaintiffs' California Constitutional liberty rights.

### III.   The Balance of Equities Tips Decidedly in Plaintiffs' Favor.

A Court considering an application for a TRO must identify the harm that a TRO might cause a defendant and weigh it against the injury to a plaintiff. *Armstrong v. Marurak*, 94 F.3d 566, 568 (9th Cir. 1996). The hardships asserted by the State are vastly outweighed by the hardship to the plaintiffs.

The Fifth and Fourteenth amendments of the U.S. Constitution and Article 1 of the California Constitution secure Plaintiffs' fundamental rights to engage in vocational activities of their own choosing. Plaintiffs have shown facially and as-applied invalidity of the Orders, showing that leaving these Orders in place for even a brief period of time "would substantially chill the exercise of fragile and constitutionally fundamental rights," and thereby constitute an intolerable hardship to Plaintiffs. *Reed*, 523 F.Supp.2d at 1101. As mentioned above, Defendants' ban on operating businesses deemed "non-essential," even while socially distanced with personal protective equipment and any number of appropriate safety measures such as used in other states at this time, deprives Plaintiffs, and more than 500,000 other Californians, of their ability to exercise their fundamental rights to engage in vocational activities of their own choosing and for which they obtained state-required licenses (Lam, Gonzalez, Mantea, and Ibarra Decls.)

By contrast, temporarily enjoining Defendants' enforcement of the Orders will not result in hardship to Defendants, who are in a position to adopt, at least on an

Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

interim basis, a more narrowly crafted set of equally applied provisions that enable the government to achieve any legitimate ends without unjustifiably invading First and Fourteenth Amendment freedoms. *See Id.* In addition, Defendants will suffer no legitimate harm by accommodating Plaintiffs' exercise of fundamental rights in the same manner Defendants are accommodating thousands of other businesses.

### IV.   A Temporary Restraining Order is in the Public Interest.

The requirement that issuance of a preliminary injunction be in the "public interest" is usually satisfied when it is clear that core constitutional rights would remain in jeopardy unless the court intervened. *Reed*, 523 F. Supp. 2d at 1101.

In this instance, quite possibly the only remedy available to Plaintiffs is an order to stay enforcement action or invalidate the bans. California courts have consistently held that damages inflicted in the course of a *proper exercise* of the state's police power are noncompensable. *Farmers Ins. Exch. v. Cal.*, 175 Cal. App. 3d 494, (1985). [emphasis added]. Because Plaintiffs argue that the Defendants have acted *ultra vires* in this situation, an injunction restraining the Defendants from enforcing their Orders which violate the Constitution may well be their only remedy.

As time passes since the Governor's original proclamation of a State of Emergency, the Governor's Order—with its overly broad and perpetual nature—becomes a more and more glaring departure[11] from the powers granted under the California Emergency Services Act. California Government Code § 8629 provides, in relevant part, "The Governor *shall* proclaim the termination of a state of emergency at the earliest possible date that conditions warrant." (Emphasis added.) The Governor and the Public Health Officer are not engaged in the "proper exercise" of police power in arbitrarily selecting businesses as "essential" or "non-essential." None of the powers

---

[11] Governor Newsom credited the IHME model with being the basis for the policies at issue here, a model that has come under heavy criticism. https://www.statnews.com/2020/04/17/influential-covid-19-model-uses-flawed-methods-shouldnt-guide-policies-critics-say/.



Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

delineated in Section 8570 or elsewhere authorize the Governor to close entire sectors of the economy for months on end. The Governor simply ordered Plaintiffs and 500,000 licensed Californians to shutter their businesses, cease working, remain at home, and refrain from earning a living "until further notice." Defendants have offered no evidence that this relates in any way to the health and safety of the public based on classifications made by the Public Health Officer who likewise acted without statutory authority.[12]

While this motion does not seek a global cancellation of the Governor's Order or his Emergency Proclamation, this Court surely has the authority to delay arbitrary and capricious enforcement of the "essential" versus "non-essential" guidelines issued by Dr. Angell that are incorporated into Governor Newsom's Executive Order.

### THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT

Rule 65(c) of the Federal Rules of Civil Procedure provides that a TRO or preliminary injunction may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court has discretion as to whether any security is required and, if so, the amount thereof. *See, e.g.*, *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Plaintiffs request that the Court waive any bond requirement because enjoining Defendants from unconstitutionally enforcing the orders as to First Amendment protected activities will not financially affect Defendants, who already categorically exempted specified non-constitutionally-protected activities from compliance. A bond would, however, be burdensome on already burdened Plaintiffs under these circumstances. *See, e.g.*, *Bible Club v. Placentia-Yorba Linda School Dist.*, 573 F. Supp. 2d 1291, n.6 (C.D. Cal. 2008) (waiving requirement of student group to post a bond

---

[12] Accessible as of May 18, 2020: https://www.theepochtimes.com/no-spike-in-ccp-virus-in-places-reopening-says-hhs-secretary_3354015.html.



Memorandum of Points and Authorities                    Case No.: 2:20-cv-04275

where case involved "the probable violation of [the club's] First Amendment rights" and minimal damage to the District issuing injunction); *citing Doctor John's, Inc. v. Sioux City*, 305 F. Supp. 2d 1022, 1043-44 (N.D. Iowa 2004) ("requiring a bond to issue before enjoining potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because the rights potentially impinged by the governmental entity's actions are of such gravity that protection of those rights should not be contingent upon an ability to pay.").

## CONCLUSION

Plaintiffs' fundamental constitutional rights to procedural and substantive due process, and equal protection—rights that should protect Plaintiffs—will remain in jeopardy so long as Plaintiffs licensed activities are prohibited as "non-essential." Accordingly, issuance of injunctive relief during this case's proceedings is proper.

Respectfully Submitted,

Date: May 19, 2020                    DHILLON LAW GROUP INC.

                            By:   /s Harmeet K. Dhillon
                                  HARMEET K. DHILLON
                                  MARK P. MEUSER
                                  GREGORY R. MICHAEL

                                  GERAGOS & GERAGOS
                                  MARK GERAGOS
                                  ALEXANDRA KAZARIAN
                                  MATTHEW VALLEJO

                                  VOLLEBREGT LAW CORPORATION
                                  JAKE M. VOLLEBREGT

                                  Attorneys for Plaintiffs



---

24