1  XAVIER BECERRA
   Attorney General of California
2  PAUL STEIN
   Supervising Deputy Attorney General
3  S. CLINTON WOODS
   Deputy Attorney General
4  JOHN D. ECHEVERRIA
   Deputy Attorney General
5  State Bar No. 268843
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3479
7    Fax:  (415) 703-1234
     E-mail:  John.Echeverria@doj.ca.gov
8  *Attorneys for Defendants*

9

10            IN THE UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

13

14  **PROFESSIONAL BEAUTY**          Case No. 2:20-cv-4275-RGK-AS
15  **FEDERATION OF CALIFORNIA,**
    **et al.,**                      **MEMORANDUM OF POINTS AND**
16                                   **AUTHORITIES IN SUPPORT OF**
                          Plaintiffs, **DEFENDANTS' MOTION TO**
17                                   **DISMISS FIRST AMENDED**
         **v.**                       **COMPLAINT**
18
    **GAVIN NEWSOM, et al.,**        **[Fed. R. Civ. P. 12(b)(6)]**
19
                         Defendants.  Date:        August 17, 2020
20                                    Time:        9:00 a.m.
                                      Courtroom:   850
21                                    Judge:       Hon. R. Gary Klausner
                                      Action Filed: May 12, 2020
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

    I.    The COVID-19 Pandemic and the State's Response ........................... 2

        A.    California's Swift Response to the COVID-19 Pandemic ......... 3

        B.    The State's Resilience Roadmap ................................................ 3

        C.    The Release of Guidance for Personal Care Services ............... 5

        D.    The Ongoing Public-Health Emergency .................................... 5

    II.    The Present Action ............................................................................... 7

        A.    Plaintiffs' First Amended Complaint ......................................... 7

        B.    The Denial of Plaintiffs' Motion for a Preliminary Injunction ................................................................................... 7

LEGAL STANDARD ............................................................................................ 8

ARGUMENT ........................................................................................................ 9

    I.    Plaintiffs Fail to State a Plausible Claim upon Which Relief May Be Granted ................................................................................... 9

        A.    Plaintiffs Fail to State a Claim under the Deferential *Jacobson* Framework ................................................................. 9

        B.    Under Traditional Constitutional Standards, Plaintiffs' Claims Fail as a Matter of Law .............................................. 12

            1.    Due Process Claim under the Fourteenth Amendment (Claim 1) .................................................. 12

            2.    Equal Protection Claim under the Fourteenth Amendment (Claim 2) .................................................. 13

            3.    Takings Claim under the Fifth Amendment (Claim 3) ........................................................................ 14

            4.    Claim of Excessive Fines/Cruel and Unusual Punishment under the Eighth Amendment (Claim 4) ........................................................................ 16

            5.    State Law Claims under the California Constitution (Claims 5-7) ................................................................. 19

    II.    At a Minimum, Plaintiffs Should Be Required to Amend Their Complaint to Address Current Directives ......................................... 20

CONCLUSION ................................................................................................... 21

i

1

**TABLE OF AUTHORITIES**

2

3                                                                    **Page**

4       **CASES**

5       *Akins v. United States*
            82 Fed. Cl. 619 (2008) ............................................................... 15
6

7       *Ashcroft v. Iqbal*
            556 U.S. 662 (2009) .................................................................... 8
8

9       *Austin v. United States*
            509 U.S. 602 (1993) .................................................................. 16

10

11      *Balice v. U.S. Dep't of Agric.*
            203 F.3d 684 (9th Cir. 2000) ..................................................... 17

12

13      *Benson v. Walker*
            274 F. 622 (4th Cir. 1921) ........................................................... 9

14

15      *Best Supplement Guide, LLC v. Newsom*
            2020 WL 2615022 (E.D. Cal. May 22, 2020) ............................ 10

16      *Bols v. Newsom*
            No. 20-cv-00873-BEN-BLM (S.D. Cal. June 30, 2020) ............ 10
17

18      *Burford v. Sun Oil Co.*
            319 U.S. 315 (1943) .................................................................. 19
19

20      *Cain v. State of Arkansas*
            734 F.2d 377 (8th Cir. 1984) ..................................................... 17

21      *Cheatham v. Real Time Resolutions, Inc.*
22          2020 WL 1000606 (C.D. Cal. Jan. 7, 2020) ............................... 2

23      *Chi., B. & Q. R. Co. v. Illinois*
            200 U.S. 561 (1906) .................................................................. 15
24

25      *City of Cleburne v. Cleburne Living Ctr.*
            473 U.S. 432 (1985) ............................................................ 12, 13
26

27      *Coakley v. Murphy*
            884 F.2d 1218 (9th Cir. 1989) ..................................................... 9
28

ii

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3   *Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of*
4       *State of La.*
5       186 U.S. 380 (1902) ...................................................................... 9

6   *Conservation Force v. Salazar*
        677 F. Supp. 2d 1203 (N.D. Cal. 2009)........................................ 16, 17
7

8   *Cross Culture Christian Ctr. v. Newsom*
        __ F. Supp. 3d __, 2020 WL 2121111 (E.D. Cal. May 5, 2020) ...................... 10
9

10  *Gallinger v. Becerra*
        898 F.3d 1012 (9th Cir. 2018) ...................................................... 13

11  *Gish v. Newsom*
12      2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) .................................... 10

13  *Givens v. Newsom*
14      __ F. Supp. 3d __, 2020 WL 2307224 (E.D. Cal. May 8, 2020) ...................... 10

15  *Gonzalez v. Duncan*
16      551 F.3d 875 (9th Cir. 2008) ........................................................ 17

17  *Halverson v. Skagit Cnty.*
        42 F.3d 1257 (9th Cir. 1994) ........................................................ 12
18

19  *Harmelin v. Michigan*
        501 U.S. 957 (1991) .................................................................. 16
20

21  *Hickox v. Christie*
        205 F. Supp. 3d 579 (D.N.J. 2016)................................................... 9
22

23  *Horne v. Dep't of Agric.*
        135 S. Ct. 2419 (2015) ................................................................ 14

24  *Ikuta v. Ikuta*
25      97 Cal. App. 2d 787 (1950) .......................................................... 19

26  *In re Cutera Securities Litig.*
        610 F.3d 1103 (9th Cir. 2010) ........................................................ 8
27

28

1

2

### TABLE OF AUTHORITIES
### (continued)

**Page**

3

*In re Toll Roads Litigation*

4
    2018 WL 4945314 (C.D. Cal. July 31, 2018) ...................................................... 18

5

*Jacobson v. Commonwealth of Massachusetts*

6
    197 U.S. 11 (1905) ...................................................................................... *passim*

7

*Kansas v. Hendricks*
    521 U.S. 346 (1997) .......................................................................................... 9

8

9

*La. Power & Light Co. v. Thibodaux*
    360 U.S. 25 (1959) ........................................................................................... 19

10

*Lingle v. Chevron U.S.A., Inc.*

11
    544 U.S. 528 (2005) ......................................................................................... 14

12

*Loretto v. Teleprompter Manhattan CATV Corp.*

13
    458 U.S. 419 (1982) ......................................................................................... 14

14

*Lucas v. S.C. Coastal Council*

15
    505 U.S. 1003 (1992) ....................................................................................... 14

16

*Mugler v. Kansas*

17
    123 U.S. 623 (1887) ......................................................................................... 15

18

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*

19
    810 F.3d 631 (9th Cir. 2015) ............................................................................ 20

20

*PCG-SP Venture I LLC v. Newsom*
    No. EDCV 20-1138 (C.D. Cal. June 23, 2020) ................................................. 10

21

22

*Penn Central Transp. Co. v. City of N.Y.*
    438 U.S. 104 (1978) .................................................................................. 13, 15

23

*Pennhurst State Sch. & Hosp. v. Halderman*

24
    465 U.S. 89 (1984) ........................................................................................... 19

25

*S. Bay United Pentecostal Church v. Newsom*

26
    140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) ......................... 2, 8, 9, 10, 18

27

*San Remo Hotel, L.P. v. City & Cnty. of San Francisco*

28
    27 Cal. 4th 643 (2002) ..................................................................................... 19

iv

1

2

**TABLE OF AUTHORITIES**
**(continued)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page**

*Shanks v. Dressel*
    540 F.3d 1082 (9th Cir. 2008) ................................................................. 12

*Six v. Newsom*
    __ F. Supp. 3d __, No. 820-cv-00877-JLS-DFM, 2020 WL
    2896543 (C.D. Cal. May 22, 2020) ......................................................... 10

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*
    535 U.S. 302 (2002) ............................................................................... 14

*United States v. $100,348.00 in U.S. Currency*
    354 F.3d 1110 (9th Cir. 2004) ................................................................. 16

*United States v. $4,224,958.57*
    392 F.3d 1002 (9th Cir. 2004) ................................................................. 16

*United States v. Bajakajian*
    524 U.S. 321 (1998) .......................................................................... 16, 18

*United States v. Chalk*
    441 F.2d 1277 (4th Cir. 1971) ................................................................... 9

*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003) ..................................................................... 9

**STATUTES**

Business and Professions Code § 7303.1 ....................................................... 15

Government Code § 8665 .............................................................................. 16

Penal Code § 19 ...................................................................................... 16, 18

**CONSTITUTIONAL PROVISIONS**

California Constitution
    Article 1 ............................................................................................ 19, 20
    Article 1, § 1 ............................................................................................ 7
    Article 1, § 7 ............................................................................................ 7
    Article 1, § 19 .......................................................................................... 7

v

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

U.S. Constitution

 Fifth Amendment.............................................................................7, 14

 Eighth Amendment.........................................................................*passim*

 Eleventh Amendment ..............................................................................19

 Fourteenth Amendment ...........................................................7, 12, 13, 14

**C**OURT **R**ULES

Federal Rules of Civil Procedure, Rule 12(b)(6)......................................1, 8

Federal Rules of Evidence, Rule 201 ...........................................................2

**INTRODUCTION**

The State of California continues to combat SARS-CoV-2, the virus causing the novel coronavirus disease-2019 ("COVID-19") that has spawned a public-health emergency on a magnitude unseen for at least a century.  Plaintiffs—the Professional Beauty Federation of California ("PBFC"), individual licensed cosmetologists, and a licensed cosmetology school—assert a variety of claims challenging the constitutionality of the State's response to the pandemic, particularly the State's initial directives.  On June 8, 2020, the Court denied their motion for preliminary injunctive relief.  Dkt. 32.  Much has changed since then.  On July 2, the State released guidance for nail salons and other personal care services, under which most if not all of Plaintiffs' services were allowed to resume with modifications if approved by the local jurisdiction.  Since then, however, the virus has come roaring back in California, as it has nation-wide.  In response to recent trends, on July 13, 2020, the Governor announced new restrictions to halt the spread of COVID-19, including renewed restrictions on personal care services in certain counties most affected by COVID-19.

Although the factual situation and the State's emergency public-health directives continue to evolve, the legal standard for assessing the validity of these directives remains the same as it was when the Court denied the preliminary injunction motion.  It is the province of the State's political actors and public-health experts—and not the Courts—to determine when and how to reopen California's economy and protect the public, and, in any event, the State's orders do not violate Plaintiffs' constitutional rights even under traditional constitutional standards.

Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Each of Plaintiffs' seven causes of action is irremediably defective as a matter of law, and should be dismissed without leave to amend, for many of the same reasons discussed in the Court's order denying Plaintiffs' motion for a preliminary

1

injunction.  Whether viewed through the lens of *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905), or under the constitutional standards that traditionally apply, each of Plaintiffs' claims fails as a matter of law.  If the Court were to find that amendment is possible (and it should not), it should require Plaintiffs to replead their claims to address the State's operative directives— including the State's guidance for hair salons and other personal care services—and the current surge of COVID-19 in California and throughout the country.

For these reasons, and those explained more fully below, the Court should dismiss Plaintiffs' First Amended Complaint ("FAC").

## BACKGROUND

### I.   THE COVID-19 PANDEMIC AND THE STATE'S RESPONSE

COVID-19 is a highly contagious and deadly disease, which can be readily transmitted to others.  *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring); *see also* Dkt. 32 at 9.  To date, more than 14 million people have been diagnosed with the disease and more than 603,000 people have died from the disease worldwide.[1]  In the United States, there have been more than 3.7 million confirmed cases of COVID-19 and more than 140,000 deaths attributed to the disease.[2]  In California alone, more than 391,000 Californians have been diagnosed with COVID-19 and 7,694 have died from the disease.[3]

---

[1] *See* World Health Organization, Coronavirus Disease (COVID-19) Pandemic, https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited July 20, 2020).

[2] *See* Ctrs. for Disease Control & Prevention, Cases in U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited July 20, 2020).  The Court may take judicial notice of the reported COVID-19 cases and deaths, and other matters of public record, without converting Defendants' motion to dismiss into a motion for summary judgment.  *See* Fed. R. Evid. 201; *Cheatham v. Real Time Resolutions, Inc.*, No. 2:19-cv-08911-RGK-JPR, 2020 WL 1000606, at *2 (C.D. Cal. Jan. 7, 2020).

[3] Cal. Dep't of Public Health, COVID-19 Statewide Update, https://update.covid19.ca.gov/ (last visited July 20, 2020).

### A.    California's Swift Response to the COVID-19 Pandemic

California responded early and decisively to this crisis, implementing measures to slow the spread of COVID-19.  On March 4, the Governor proclaimed a State of Emergency.  FAC ¶ 23; *see* Defs.' Req. for Judicial Notice ("RJN"), Ex. 1.  On March 19, the Governor issued Executive Order N-33-20 (the "Stay-at-Home Order") directing all California residents to heed the directives of the State's Public Health Officer, FAC ¶ 25, which required "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of [16 specified] federal critical infrastructure sectors."  RJN, Ex. 2 at 1.[4]  In addition to those 16 sectors, the Public Health Officer retained the authority to designate additional sectors as critical.  *Id.*  Under the Stay-at-Home Order, individuals who were not designated "Essential Critical Infrastructure Workers" were permitted to leave their houses for specified purposes, such as "access[ing] such necessities as food, prescriptions, and health care."  *Id.* at 2.  On March 22, 2020, the Public Health Officer released the State's list of "Essential Critical Infrastructure Workers."  FAC ¶ 29; RJN, Ex. 3.[5]  This list did not include "workers in the hair, skin, nail care, and electrolysis industries."  FAC ¶ 30.

### B.    The State's Resilience Roadmap

On April 28, 2020, the Governor announced the State's four-stage "Resilience Roadmap" to guide the gradual and safe reopening of the State.  *See* RJN, Ex. 4 at 1.  The Resilience Roadmap involves the following four stages: safety and preparation (Stage 1); reopening of lower-risk workplaces and other spaces (Stage 2); reopening of higher-risk workplaces and other spaces (Stage 3); and,

---

[4] Plaintiffs indicate that the Stay-at-Home Order was attached to the FAC as Exhibit 1, *see* FAC ¶ 25, but no exhibits were attached to the filing.  Nevertheless, the FAC includes a hyperlink to the Stay-at-Home Order, FAC ¶ 2 n.2.  For the Court's convenience, Defendants have submitted the complete text of the relevant directives as exhibits to their concurrently filed RJN.

[5] Plaintiffs provide a hyperlink to this list in the FAC.  *See* FAC ¶ 29 n.7.

finally, an end to the Stay-at-Home Order (Stage 4).  Dkt. 32 at 3.[6]  To implement the Resilience Roadmap, on May 4, 2020, the Governor issued Executive Order N-60-20, providing that all California residents are to continue complying with the Stay-at-Home Order and that the State Public Health Officer shall establish criteria and procedures for qualifying local jurisdictions to move more quickly through Stage 2 of the Roadmap.  FAC ¶ 60; *see also* RJN, Ex. 5 at 2.

On May 7, 2020, the State Public Health Officer issued an order that the State move into Stage Two based on her review of the data and stating that she would "progressively designate sectors, businesses, establishments, or activities that may reopen with certain modifications, based on public health and safety needs" and at "a pace designed to protect public health and safety."  *See* RJN, Ex. 6 at 2.  Local health jurisdictions that attest to satisfying certain criteria established by the California Department of Public Health are permitted to move through Stage 2 more quickly than the state as a whole.  *Id.* at 3; *see also* RJN, Ex. 7.  The State maintains a list of counties that have filed the requisite attestations, and currently, 56 of California's 58 counties have filed attestations to move more quickly through Stage 2.[7]  While California continues to move through the Resilience Roadmap, "[t]he goal continues to be to open the state in a way that minimizes the risk for COVID-19 to the extent possible, which includes: 1) limiting non-essential movement and mixing of populations, especially within jurisdictions with higher confirmed cases, and 2) delaying the opening of environments in which there is prolonged and close contact as part of the way [the] business must operate."[8]  To ensure that local jurisdictions are able to respond rapidly to surges in the disease, attesting counties must have "triggers" for "either slowing the pace through Stage 2

---

[6] *See also* Cal. Dep't of Public Health, Resilience Roadmap, https://covid19.ca.gov/roadmap/ (last updated June 18, 2020) (last visited July 20, 2020).

[7] *See* Cal. Dep't of Public Health, COVID-19 County Variance Attestation Form, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/County_Variance_Attestation_Form.aspx (last visited July 20, 2020).

[8] *Id.*

or tightening modifications."  RJN, Ex. 7 at 4.

## C.    The Release of Guidance for Personal Care Services

On May 26, 2020, the State released guidelines to allow limited services at barbershops and salons in counties that have attested to their readiness to move more quickly through Stage 2.  *See* RJN, Ex. 8.  These guidelines permit services only if the licensee and client can both wear face coverings for the entirety of the service and if they do not require the customer's face to be touched, *e.g.*, haircuts, extensions, and color services.  *Id.* at 2-3.  In addition, on July 2, 2020, the State released guidance for "expanded personal care services," which includes "personal care that requires touching a client's face, e.g. facials, electrolysis, and waxing," allowing those services to be provided with modifications in counties that have filed the requisite attestations.  RJN, Ex. 9 at 2.  This guidance includes specific "considerations" for esthetic, skin-care, cosmetology, electrology, and nail services.  *Id.* at 12-13.[9]

## D.    The Ongoing Public-Health Emergency

As California has proceeded through the Resilience Roadmap, the State has continued to monitor COVID-19 closely in each local community to modulate the State's response if needed and to help local communities contain the disease.  In conjunction with the reopening process, the State has maintained a list of counties—the "County Monitoring List"—that do not meet benchmarks established by the State in three areas—Elevated Disease Transmission, Increased Hospitalizations, and Limited Hospital Capacity.[10]

The State is at a critical juncture in its response to COVID-19.  The pandemic

[9] The guidance for expanded personal care services also addresses body-art professionals, tattoo parlors, and piercing shops as well as massage services.  RJN, Ex. 9 at 13-14.

[10] Cal. Dep't of Public Health, County Data Monitoring, Step 1: Active Data Monitoring, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/CountyMonitoringDataStep1.aspx (last visited July 20, 2020).

5

1    has been escalating nationwide.[11]  In California, between June and July, the daily

2    rate of new COVID-19 cases doubled, and hospitalization rates have increased

3    substantially.  RJN, Ex. 10.

4          On July 13, 2020, the Public Health Officer, in consultation with local

5    communities and public-health officials, ordered the statewide closure of dine-in

6    restaurants, movie theaters, zoos and museums, and cardrooms.  RJN, Ex. 11 at 1.

7    For counties on the County Monitoring List for three or more consecutive days, the

8    order also prohibits "indoor operations for additional sectors which promote the

9    mixing of populations beyond households and make adherence to physical

10   distancing with face covering difficult," *id.* at 1, including places of worship, gyms

11   and fitness centers, hair salons and barbershops, and personal care services (e.g.,

12   nail salons, massage parlors, and tattoo parlors), *id.* at 2.  Businesses operating in

13   these sectors may, however, "modify operations to provide services outside or by

14   pick-up."  RJN, Ex. 12 at 1.  On July 20, 2020, the California Department of Public

15   Health and the California Department of Consumer Affairs each released guidance

16   addressing the provision of personal services outdoors.  *See* RJN, Exs. 13, 14, 15.

17   Also on July 20, 2020, the Board of Barbering and Cosmetology issued a notice

18   that it will prioritize enforcement on licensees in counties appearing on the County

19   Monitoring List who continue to operate indoors in violation of the July 13 Order,

20   and will not discipline licensees operating outdoors in a manner consistent with the

21   July 20 guidance.  *See* RJN, Ex. 16.  As of July 16, 2020, 33 of California's 58

22   counties—representing more than 80 percent of the State's population—were on

23   the County Monitoring List and, thus, subject to the new closures of indoor

24   operations for hair salons, barbershops, and other personal care services.[12]

25          [11] *See, e.g.*, Noam N. Levey, *COVID-19 Death Tolls Now Rising in Key*
26   *States After Weeks of Decline Nationwide*, L.A. Times, July 9, 2020, *available at*
     https://www.latimes.com/politics/story/2020-07-09/covid-19-deaths-tolls-rising
27   (last visited July 20, 2020).
            [12] Cal. Dep't of Public Health, County Variance Info, County Data
28   Monitoring (last updated July 20, 2020 at 9:59 a.m.),
                                                                    (continued…)

## II.   THE PRESENT ACTION

### A.   Plaintiffs' First Amended Complaint

On May 12, 2020, Plaintiffs filed their complaint against Defendants.  On May 18, 2020, Plaintiffs filed the operative FAC.  Dkt. 11.  Plaintiffs challenge the Governor's Stay-at-Home Order and reopening plan facially and as applied to them, FAC ¶ 2, asserting seven causes of action:  (1) violation of the Fourteenth Amendment to the U.S. Constitution (substantive and procedural due process); (2) violation of the Fourteenth Amendment to the U.S. Constitution (equal protection); (3) violation of the Fifth Amendment to the U.S. Constitution (takings); (4) violation of the Eighth Amendment to the U.S. Constitution (excessive fines and cruel and unusual punishment); (5) violation of article 1, section 1 of the California Constitution (right to liberty); (6) violation of article 1, section 7 of the California Constitution (due process); and (7) violation of article 1, section 19 of the California Constitution (takings).  Plaintiffs pray for a declaration that the Stay-at-Home Order is unconstitutional and an injunction against enforcing it against Plaintiffs.  *Id.* at 43 (Prayer for Relief).

### B.   The Denial of Plaintiffs' Motion for a Preliminary Injunction

On May 19, 2020, Plaintiffs filed an ex parte application for a temporary restraining order to enjoin enforcement of the Stay-at-Home Order against them. Dkt. 16.  After thorough briefing on the application, on June 8, 2020, the Court converted Plaintiffs' application to a motion for preliminary injunction and denied the motion without prejudice.  Dkt. 32.

The Court held that Plaintiffs were not likely to succeed on the merits of the claims they asserted in support of their motion for an injunction.[13]  Dkt. 32 at 7-12. The Court applied the *Jacobson* framework to Plaintiffs' claims, under which the

https://covid19.ca.gov/roadmap-counties/#affected-counties (last visited July 20, 2020).

[13] Plaintiffs' did not address their fourth cause of action for violation of the Eighth Amendment in support of their motion for a preliminary injunction, and the Court did not analyze that claim in denying the motion.  Dkt. 32 at 12.

"Court must uphold the Stay at Home Order's bar on Plaintiffs practicing their profession unless (1) the measure has no real or substantial relation to public health, or (2) the measure is 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Id.* at 8 (quoting *Jacobson*, 197 U.S. at 31). The Court determined, first, that the Stay-at-Home Order "bears a real and substantial relation to public health insofar as it bars cosmetologists from working." *Id.* at 9. Second, the Court held that the Stay-at-Home Order was not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 10-12.

The Court also held that the balance of the equities and the public interest did not at the time "tip[] heavily" in favor of enjoining the Stay-at-Home Order with respect to Plaintiffs' professions. Dkt. 32 at 13. The Court observed that "California's Stay at Home Order is informed by a desire to preserve public health in response to a pandemic" and that "[e]njoining the State from enforcing the Stay at Home Order against Plaintiffs at this stage in the crisis would be premature and might undermine the State's efforts and disrupt the balance of powers established by our federal system." *Id.* (citing *S. Bay United Pentecostal Church*, 140 S. Ct. 1613 (Roberts, C.J., concurring)). Accordingly, the Court denied without prejudice Plaintiffs' motion for a preliminary injunction.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible on its face." *In re Cutera Securities Litig.*, 610 F.3d 1103, 1107 (9th Cir. 2010) (citation omitted). In ruling on a motion to dismiss, a court does not accept as true a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. If a complaint's defects are not curable, the court should dismiss without leave to

amend.  *See Coakley v. Murphy*, 884 F.2d 1218, 1222 (9th Cir. 1989).  In ruling on a motion to dismiss, a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

ARGUMENT

**I.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM UPON WHICH RELIEF MAY BE GRANTED**

   **A.    Plaintiffs Fail to State a Claim under the Deferential *Jacobson* Framework**

The Supreme Court has long recognized that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members."  *Jacobson*, 197 U.S. at 27; *see also Kansas v. Hendricks*, 521 U.S. 346, 356-57 (1997) (recognizing the continuing vitality of *Jacobson*); *S. Bay United Pentecostal Church*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (applying *Jacobson*).  The Court has permitted states to enact "quarantine laws and health laws of every description."  *Jacobson*, 197 U.S. at 27 (internal quotation marks omitted); *see, e.g.*, *Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of State of La.*, 186 U.S. 380 (1902); *see also Benson v. Walker*, 274 F. 622 (4th Cir. 1921); *Hickox v. Christie*, 205 F. Supp. 3d 579 (D.N.J. 2016).  The exercise of these emergency powers "necessarily restricts activities that would normally be constitutionally protected."  *United States v. Chalk*, 441 F.2d 1277, 1280 (4th Cir. 1971).  Although the Constitution is not suspended during a public-health emergency, the Supreme Court has recognized that "under the pressure of great dangers" constitutional rights may be reasonably restricted "as the safety of the general public may demand."  *Jacobson*, 197 U.S. at 29.

Under the *Jacobson* framework, an emergency measure must be upheld unless (1) the measure "has no real or substantial relation to public health," or (2) the measure is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."  Dkt. 32 at 8 (quoting *Jacobson*, 197 U.S. at 31).  A line of

9

judicial rulings has invoked *Jacobson* in rejecting challenges to the Stay-at-Home Order. *See*, *e.g.*, *S. Bay United Pentecostal Church*, 2020 WL 2813056, at *1 (Roberts, C.J., concurring) (declining to enjoin enforcement of the State's orders' ban on in-person religious services); *Best Supplement Guide, LLC v. Newsom*, No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022, at *3–7 (E.D. Cal. May 22, 2020) (concluding that the State's orders are a "constitutional response to an unprecedented pandemic"); *Givens v. Newsom*, __ F. Supp. 3d __, No. 2:20-cv-00852-JAM-CKD, 2020 WL 2307224, at *3–5 (E.D. Cal. May 8, 2020) (applying *Jacobson* to conclude that the plaintiffs were unlikely to succeed on their challenge to the Stay-at-Home Order); *Six v. Newsom*, __ F. Supp. 3d __, No. 820-cv-00877-JLS-DFM, 2020 WL 2896543 at *1–7 (C.D. Cal. May 22, 2020) (same); *Cross Culture Christian Ctr. v. Newsom*, __ F. Supp. 3d __, No. 2:20-cv-00832-JAM-CKD, 2020 WL 2121111, at *3–5 (E.D. Cal. May 5, 2020) (the State's orders "bear a real and substantial relation to public health"); *Gish v. Newsom*, No. 5:20-cv-00755-JGB-KKX, 2020 WL 1979970, at *4–5 (C.D. Cal. Apr. 23, 2020) (same), *appeal docketed*, No. 20-55445 (9th Cir. Apr. 28, 2020); *see also* RJN, Ex. 17 at 4 (Order Denying Ex Parte Application for TRO, *Bols v. Newsom*, No. 20-cv-00873-BEN-BLM (S.D. Cal. June 30, 2020)); RJN, Ex. 18 at 6-16 (Order Denying Pls.' Emergency Application for TRO, *PCG-SP Venture I LLC v. Newsom*, No. EDCV 20-1138 JGB (KKx) (C.D. Cal. June 23, 2020)).

Plaintiff's FAC fails to state a claim that the Stay-at-Home Order is unconstitutional under the *Jacobson* framework for two reasons. First, the FAC fails to plausibly allege that the Stay-at-Home Order "has no real or substantial relation to" "public health" in addressing the COVID-19 pandemic. *Jacobson*, 197 U.S. at 31. The FAC fails to allege any *facts* to support a contention that COVID-19 does not currently pose a serious public-health threat warranting the current public-health orders, or that the activities Plaintiffs wish to undertake are not higher risk than activities currently authorized under the orders. Six weeks ago,

1    the Court determined that the Stay-at-Home Order was plainly related to public

2    health.  Dkt. 32 at 9.  That fact remains.  Since that ruling, 3,047 more Californians

3    have died from COVID-19, and certain parts of the State, which had progressed

4    more quickly through the Roadmap, are facing a surge of the disease.  Due to the

5    nature of Plaintiffs' personal care services, there is a heightened risk of

6    transmission of the virus that causes COVID-19.  Dkt. 32 at 9.  Plaintiffs cannot

7    plausibly allege that the Stay-at-Home Order fails under the first prong of the

8    *Jacobson* framework.

9         Second, the FAC fails to allege that the Stay-at-Home Order is "*beyond all*

10   *question*, a plain, palpable invasion of rights secured by the fundamental law."

11   *Jacobson*, 197 U.S. at 32 (emphasis added).  As discussed in detail in Section I.B,

12   *infra*, each of Plaintiffs' claims fails as a matter of law under ordinary constitutional

13   scrutiny, so *a fortiori* their claims fail to show a plain and palpable constitutional

14   violation.  But even if Plaintiffs' allegations could be seen as stating some claim

15   against the Stay-at-Home Order—and, as discussed in Section I.B, they do not—the

16   second prong of *Jacobson* requires more than just a plausible claim; it requires a

17   *plain and palpable* invasion of constitutional rights that the FAC fails to allege.

18        Under the *Jacobson* framework, the FAC cannot state a claim and should be

19   dismissed without leave to amend.

20        **B.   Under Traditional Constitutional Standards, Plaintiffs' Claims**

21              **Fail as a Matter of Law**

22        Even if Plaintiffs' claims are analyzed under constitutional standards that

23   normally apply in non-emergency circumstances, Plaintiffs' claims are irremediably

24   defective and should be dismissed without leave to amend.

25              **1.   Due Process Claim under the Fourteenth Amendment**

26                    **(Claim 1)**

27        It appears that the FAC asserts both a procedural and substantive due process

28   claim.  *See* FAC ¶ 100.  "To obtain relief on a procedural due process claim, the

plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008).  Plaintiffs fail to allege that they have been deprived of any property interest merely because the Stay-at-Home Order restricts the *use* of their professional licenses.  Dkt. 32 at 11.  And even if the FAC plausibly alleges a deprivation of property or liberty interest, Plaintiffs fail to allege a lack of *due* process.  "Governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994).

Plaintiffs' substantive due process claim also fails.  Rational basis, and not strict scrutiny, applies to Plaintiffs' substantive due process claim because the FAC fails to identify a fundamental right infringed by the Stay-at-Home Order, as this Court has already held.  *See* Dkt. 32 at 11.  Under rational basis scrutiny, the Stay-at-Home Order is rationally related to a legitimate—and indeed compelling—government interest in protecting the public from COVID-19.  *See supra* Section I.A; *see* Dkt. 32 at 11.  Accordingly, Plaintiffs' due process claim fails.

### 2.    Equal Protection Claim under the Fourteenth Amendment (Claim 2)

Plaintiffs' equal protection claim fails as a matter of law for several reasons.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Differential treatment may violate the Equal Protection Clause only if (1) two similarly situated groups are treated differently, and (2) the differential treatment

fails the applicable standard of constitutional scrutiny.  *See Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018).

As a preliminary matter, Plaintiffs have failed to make the threshold showing that the State is treating *similarly situated* individuals differently.  *City of Cleburne*, 473 U.S. at 439.  The State is treating certain businesses and activities differently—including those businesses and activities in certain jurisdictions of the State—based on their degree of risk to the public health.[14]

Second, the Stay-at-Home Order is subject to rational basis scrutiny for the same reason discussed with respect to Plaintiffs' substantive due process claim.  *See supra* Section I.B.1.  Rational basis scrutiny applies because Plaintiffs have failed to identify a fundamental right that has been burdened by the Stay-at-Home Order, and the State's directives challenged in this action are rationally related to legitimate government interests.  Plaintiffs' equal protection claim fails as a matter of law.

### 3.    Takings Claim under the Fifth Amendment (Claim 3)

Plaintiffs' third cause of action asserts a takings claim under the Fifth Amendment to the U.S. Constitution.  Setting aside that the Fifth Amendment does not apply to the State, any such claim brought under the Fourteenth Amendment would fail.  The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the "[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Penn Central Transp. Co. v. City of N.Y.*, 438 U.S. 104, 123 (1978) (quotation omitted).  Takings claims are generally divided into two classes:  physical and regulatory takings.  A physical taking occurs

---

[14] Plaintiffs suggest that some licensees are permitted to work in the entertainment sector while others are not.  *See* FAC ¶ 30(a).  Licensees cannot provide cosmetology services while following public health guidance around physical distancing and therefore could not provide services as an "essential" worker.  *See* RJN, Ex. 3 at 23 ("Workers supporting the entertainment industries, studios, and other related establishments, provided they follow covid-19 public health guidance around physical distancing.").

1    when the government physically invades or takes title to property either directly or

2    by authorizing others to do so.  *Loretto v. Teleprompter Manhattan CATV Corp.*,

3    458 U.S. 419, 426 (1982).  In contrast to a physical taking, a regulatory taking

4    occurs where "government regulation of private property [is] so onerous that its

5    effect is tantamount to a direct appropriation or ouster."  *Lingle v. Chevron U.S.A.,*

6    *Inc*., 544 U.S. 528, 537 (2005).  Government regulation that "completely deprives

7    an owner of all economically beneficial use of her property" is generally deemed to

8    be a taking compensable under the Fifth Amendment.  *Id.* at 528.  However their

9    claim is construed, Plaintiffs do not, and cannot, allege that the Stay-at-Home Order

10   effects a compensable taking.

11       First, the Stay-at-Home Order does not "take" Plaintiffs' licenses, which they

12   will be permitted to use once the current restrictions are lifted.  Unlike the raisins

13   that were seized in *Horne v. Department of Agriculture*, 135 S. Ct. 2419, 2428

14   (2015), the State has not physically appropriated Plaintiffs' property, as would be

15   required to support a *per se* physical takings claim.  And Plaintiffs' regulatory

16   takings claim fares no better.  Unlike physical takings, regulatory takings have only

17   been recognized in the context of *real* property and do not occur when the value or

18   use of personal property (e.g., professional licenses) is diminished.  *See Horne*, 135

19   S. Ct. at 2427 ("*Lucas* recognized that an owner of personal property 'ought to be

20   aware of the possibility that new regulation might even render his property

21   economically worthless'" (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003,

22   1027-28 (1992))).  Even with respect to real property, a *temporary* prohibition on

23   the use or enjoyment of property does not amount to a *per se* compensable taking.

24   *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S.

25   302, 334-35 (2002) (holding that a 32-month moratorium on property development

26   did not constitute a compensable taking, and rejecting "extreme categorical rule that

27

28

14

1  any deprivation of all economic use, no matter how brief, constitutes a compensable

2  taking").[15]

3       Second, the Stay-at-Home Order is a proper exercise of the State's police

4  powers, not its eminent domain power.  *See supra* Section I.A.  When the

5  government exercises its police powers to protect the safety, health, and general

6  welfare of the public, no compensable taking has occurred.  *See Chi., B. & Q. R.*

7  *Co. v. Illinois*, 200 U.S. 561, 594 (1906) ("[T]he legislature may make police

8  regulations, although they may interfere with the full enjoyment of private property,

9  and though no compensation is given." (quotation omitted)); *Akins v. United States*,

10  82 Fed. Cl. 619, 622 (2008) ("Property seized and retained pursuant to the police

11  power is not taken for a 'public use' in the context of the Takings Clause."); *Mugler*

12  *v. Kansas*, 123 U.S. 623, 668-69 (1887) ("[A] prohibition . . . upon the use of

13  property for purposes that are declared, by valid legislation, to be injurious to the

14  health, morals, or safety of the community, cannot in any sense, be deemed a taking

15  or an appropriation of property for the public benefit.").  The FAC fails to state a

16  claim under the Takings Clause entitling them to any just compensation.

### 4.   Claim of Excessive Fines/Cruel and Unusual Punishment under the Eighth Amendment (Claim 4)

19       Plaintiffs' claim of "excessive fines" and "cruel and unusual punishment"

20  under the Eighth Amendment—which was not at issue in Plaintiffs' motion for

21  preliminary injunction—fails as a matter of law.  The Eighth Amendment provides

22  that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel

23  ─────────────────
       [15] Courts have also recognized a regulatory taking may occur when the

24  regulation is the functional equivalent of "directly appropriating private property or
ousting the owner," based on a multi-factor test.  *Penn Central Transp. Co.*, 438

25  U.S. at 124.  The FAC does not cite *Penn Central* or address the *Penn Central*
factors, though it alludes vaguely to Plaintiffs' "reasonable investment-backed

26  expectations" at various points.  Plaintiffs' obligations as licensees, however,
include an obligation to observe generally applicable laws, including but not limited

27  to the Governor's emergency directives.  Cal. Bus. & Prof. Code § 7303.1.
Plaintiffs do not, and cannot, allege that they have a reasonable, investment-backed

28  expectation of being able to serve the public during a pandemic where close,
personal contact with their clients will exacerbate the spread of the virus.

and unusual punishments inflicted." U.S. Const. amend. VIII. Here, violations of the State's orders could conceivably be punished by a sentence to "county jail not exceeding six months" and/or a "fine not exceeding one thousand dollars." Cal. Penal Code § 19; *see also* Cal. Gov't Code § 8665 (prescribing misdemeanor penalties for violations of the Governor's emergency orders). It appears that Plaintiffs are asserting an Eighth Amendment claim under both the Excessive Fines Clause and the Cruel and Unusual Punishments Clause, *see* FAC ¶ 127 (discussing potential fines and incarceration), but they fail to state a claim under either provision.

The Excessive Fines Clause in the Eighth Amendment applies only to payments "to a sovereign as punishment for some offense," and a penalty will be held unconstitutional only if it is "excessive." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998); *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (unconstitutionally excessive fines must be "grossly disproportionate to the crime"). The only potential fine identified in the FAC is the generic fine for *any misdemeanor*—up to $1,000 per offense—and Plaintiffs fail to allege facts showing that such a fine is "grossly disproportionate" to the underlying violation of disregarding the State's emergency public-health directives. FAC ¶ 123. Nor do Plaintiffs allege that they—or any other licensed beauty professional—have actually been fined. *Id.*[16] Rather, Plaintiffs merely allege that they were informed

---

[16] Indeed, Plaintiffs lack standing to bring an Eighth Amendment claim as they do not allege they have been fined or punished for any criminal or civil violation. The Excessive Fines Clause governs "fines directly imposed by, and payable to, the government." *Austin v. United States*, 509 U.S. 602, 607 (1993) (quotation omitted). It "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Id.* at 609-10. In other words, it is triggered only by a fine *imposed* by the government *for some offense*. Accordingly, plaintiffs with no legally cognizable interest in money subject to forfeiture, or payable as a fine, have no standing to bring an Eighth Amendment excessive fines challenge. *United States v. $4,224,958.57*, 392 F.3d 1002, 1005 (9th Cir. 2004); *see also, e.g., United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1120-21 (9th Cir. 2004) (holding that "Eighth Amendment standing" extends to holders of a possessory-interest in money subject to forfeiture); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1213 (N.D.

(continued…)

1   by the Board of Barbering and Cosmetology on May 1, 2020 that it "intend[s] to
2   revoke or suspend Plaintiffs' licenses, in addition to the potential for incarceration
3   and fines." FAC ¶ 124. That letter was not attached to the FAC, but was attached
4   as Exhibit 3 to Plaintiffs' original complaint. Dkt. 1. Contrary to the FAC's
5   characterization of the letter, it states: "We have heard of businesses disregarding
6   the stay at home orders. *If* businesses continue to put public health and safety at
7   risk by not following the state and local shelter in place orders, and *if* circumstances
8   warrant it, the Board *may* pursue disciplinary action against their license. This will
9   not be taken lightly." *Id.* (emphasis added). The letter did not reference "the
10  potential for incarceration and fines," FAC ¶ 124, and did not threaten any
11  imminent disciplinary action against any licensees.

12      The Cruel and Unusual Punishments Clause of the Eighth Amendment bars
13  "not only barbaric punishments, but also sentences that are disproportionate to the
14  crime committed." *Gonzalez v. Duncan*, 551 F.3d 875, 879 (9th Cir. 2008)
15  (quoting *Solem v. Helm*, 463 U.S. 277, 284 (1983)). To the extent Plaintiffs base
16  their Eighth Amendment claim on the potential suspension or revocation of their
17  licenses, such a claim fails as a matter of law. *See, e.g.*, *Cain v. State of Arkansas*,
18  734 F.2d 377, 378 (8th Cir. 1984) (holding that the Eighth Amendment does not
19  apply where loss of license is full extent of possible punishment (citing *Ingraham v.*
20  *Wright*, 430 U.S. 651, 664-68 (1977))).

21      The potential criminal punishments for violating the State's public-health
22  directives are far less severe than other penalties that have been upheld under the
23  Eighth Amendment. *See, e.g.*, *Balice v. U.S. Dep't of Agric.*, 203 F.3d 684, 698-99
24  (9th Cir. 2000) (upholding a $225,000 penalty, under a statute authorizing a penalty
25  of up to $1,000 per day, imposed in connection with violations of certain regulatory
26  requirements related to almond-handling). Indeed, the potential punishments for a
27  _____
    Cal. 2009) (granting motion to dismiss when a purported conservation group lacked
    standing to bring an Eighth Amendment challenge because "*without a forfeited*
28  *piece of property it has not alleged an injury-in-fact*" (italics added)).

misdemeanor violation under Cal. Penal Code section 19 are analogous to the punishments of up to six months incarceration or a maximum fine of $5,000 for a particular offense that the Supreme Court characterized as "confirm[ing] a minimal level of culpability" for the offense. *Bajakajian*, 524 U.S. at 337. Thus, even if Plaintiffs could allege that a violation of the State's public-health directives by licensees is a relatively minor offense, the statutory punishment for such violations would not be unconstitutionally excessive. And the potential misdemeanor penalties here are certainly not disproportionate to the gravity of the problem addressed by the State's emergency orders—a "highly contagious and often fatal disease for which there is presently no known cure." *S. Bay United Pentecostal Church*, 2020 WL 2687079, at *1 (Roberts, C.J., concurring). While far from clear, the gravamen of Plaintiffs' Eighth Amendment claim appears to be that the Stay-at-Home Order lacks a rational basis because, on April 18, 2020, the Governor stated that "we have successfully bent and arguably flattened the curve." FAC ¶¶ 125, 129. As discussed in Section I.A, *supra*, however, COVID-19 plainly remains a threat.

Any amendment to cure these pleading deficiencies would be futile. Plaintiffs allege that they were "threatened" with fines that amount to a punishment for misdemeanor violation of an emergency order. FAC ¶ 123. Plaintiffs do not allege that they have been fined the statutory maximum, nor do they allege that the statute could be applied in a constitutional way but is not. Plaintiffs' claim therefore amounts to a facial challenge to the application of the misdemeanor penalty scheme to licensee violators, which must fail if there is any set of circumstances where a punishment under this statutory scheme could pass constitutional muster. *See In re Toll Roads Litigation*, No. SACV 16-00262 AG (JCGx), 2018 WL 4945314, at *2 (C.D. Cal. July 31, 2018). "[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336.

1   There is no reason to disturb the California Legislature's judgment here.  Thus,

2   Plaintiffs cannot state an Eighth Amendment claim.

3            **5.      State Law Claims under the California Constitution
4                    (Claims 5-7)**

5        As this Court has already held, Plaintiffs' fifth, sixth, and seventh claims,

6   which allege purported violations of article 1 of the California Constitution, *see*

7   FAC ¶¶ 132-152, are barred under the Eleventh Amendment because they arise

8   under state (and not federal) law.  Dkt. 32 at 12; *see also Pennhurst State Sch. &*

9   *Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater

10  intrusion on state sovereignty than when a federal court instructs state officials on

11  how to conform their conduct to state law.  Such a result conflicts directly with the

12  principles of federalism that underlie the Eleventh Amendment.").[17]

13       Even if Plaintiffs' state-law claims were not barred, they necessarily fail on the

14  merits.  California courts have made clear that the rights to liberty and property do

15  not override the State's police powers to protect the public from emergencies such

16  as the current pandemic.  *See Ikuta v. Ikuta*, 97 Cal. App. 2d 787, 789 (1950) ("The

17  rights to enjoy liberty, to acquire, possess and protect property, which are secured

18  to the individual by section 1 [of article 1 of the California Constitution], are not

19  absolute but are 'circumscribed by the requirements of the public good.'" (citation

20  omitted)).  And courts have generally construed the federal and state takings clauses

21  "congruently," *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 27 Cal. 4th

22  643, 664 (2002) (collecting cases), so Plaintiffs' state-law takings claim would fail

23  for the same reasons their federal claim fails.  *See supra* Section I.B.3.

24

25            [17] Even if Eleventh Amendment immunity did not apply, the Court should
26  abstain from considering Plaintiffs' state-law claims.  *See La. Power & Light Co. v.*
    *Thibodaux*, 360 U.S. 25, 28 (1959) (federal courts may abstain in cases raising
27  unsettled issues of state law, where the decision would affect the state's sovereign
    powers); *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943) (recognizing
28  abstention where a case involves complex questions of state law administered by
    state administrative agencies).

1
2

## II.   AT A MINIMUM, PLAINTIFFS SHOULD BE REQUIRED TO AMEND THEIR COMPLAINT TO ADDRESS CURRENT DIRECTIVES

3  Plaintiffs' claims fail as a matter of law and should be dismissed without leave

4  to amend.  At a minimum, however, their claims must be repleaded to address the

5  current public-health directives.  The Court lacks the authority to enjoin the State's

6  recent directives prohibiting indoor personal care services in counties on the County

7  Monitoring List because such relief is too attenuated from the allegations, claims,

8  and relief requested in the FAC.  *See Pac. Radiation Oncology, LLC v. Queen's*

9  *Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (courts only have authority to grant

10  injunctive relief where the relationship between the requested injunctive relief and

11  the underlying complaint is "sufficiently strong" such that it is "'of the same

12  character as that which may be granted finally'" (quoting *De Beers Consol. Mines*

13  *v. United States*, 325 U.S. 212, 220 (1945))).  As noted, the FAC seeks to enjoin

14  only the original Stay-at-Home Order and related directives.  *See, e.g.*, FAC ¶ 2

15  (indicating that the relief requested seeks to enjoin the Governor's March 19, 2020

16  order).  Plaintiffs have not sought to amend the FAC to offer allegations of harm

17  regarding the new guidelines or moved the district court for relief from the new

18  rules.  That failure has left Defendants and the Court without fact-based allegations

19  explaining why Plaintiffs' constitutional rights are injured by the new guidelines.

20  Accordingly, even if Plaintiffs could state any of the claims asserted—and they

21  cannot—they would need to amend the pleadings to address the State's current

22  directives and the current state of the pandemic.

### CONCLUSION

23
24  For the foregoing reasons, the Court should dismiss the FAC.

25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  July 20, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General
S. CLINTON WOODS
Deputy Attorney General


/s/ John D. Echeverria
JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendants*